286 So.2d 596 (1973)
STATE of Florida, Appellant,
v.
Rudolph Valentine LEE, Appellee.
No. R-452.
District Court of Appeal of Florida, First District.
November 27, 1973.
Rehearing Denied January 7, 1974.
*597 Donald G. Nichols, State's Atty., Bartley K. Vickers, Asst. State's Atty. and Raymond L. Marky, Asst. Atty. Gen., for appellant.
Roy E. Dezern, and Walter R. Stedeford, Jacksonville, for appellee.
SPECTOR, Judge.
The State of Florida seeks reversal of an order entered by the circuit court which vacated and set aside a death sentence entered against appellee upon his conviction of murdering a police officer and instead imposed a life sentence. We agree with appellant and reverse and remand for a new trial to be held on the issue of penalty only, pursuant to the newly enacted death penalty statute, Section 921.141, Florida Statutes, F.S.A., which has recently been upheld by the Florida Supreme Court, infra.
Appellee, Rudolph Valentine Lee, was found guilty of murdering a police officer, Edward James Parker, who accosted Lee during the alleged commission of a rape in Jacksonville, Florida. Apparently seeking to escape and avoid arrest, Lee jumped out of the car where he was detaining the two alleged rape victims at gunpoint and shot and killed the officer as he was approaching to investigate the presence of the parked car.
The jury failed to recommend mercy, and on June 22, 1972, the trial court imposed the death penalty on appellee. One week later, June 29, 1972, the United States Supreme Court rendered its decision in Furman v. Georgia, 408 U.S. 238, 92 S.Ct. 2726, 33 L.Ed.2d 346 (1972), reversing the death sentence of the appellants on the ground that:
"[T]he imposition and carrying out of the death penalty in these cases constitutes cruel and unusual punishment in violation of the Eighth and Fourteenth *598 Amendments." pp. 239-240, 92 S.Ct. p. 2727.
Shortly after Furman, supra, the appellee, on July 19, 1972, filed his motion pursuant to Rule 1.800 (now 3.800), Florida Rules of Criminal Procedure, 33 F.S.A., seeking to set aside the death sentence earlier imposed upon him on the stated ground that the "United States Supreme Court effectively struck down capital punishment throughout the country in its decision in Furman v. Georgia, 40 L.W. 4923". On July 21, 1972, the trial court entered its order and judgment granting appellee's motion and finding that the death sentence was illegal on authority of Furman v. Georgia. Thereupon the court vacated the death sentence and imposed a life sentence upon the appellee.
The State took a timely appeal from that order contending that by its order the trial court erroneously ruled all death penalties, no matter how imposed or carried out, to be unconstitutional. Furman did not hold that the death penalty, per se, is unconstitutional. A number of legal scholars have announced that Furman abolished the ultimate penalty, but few judicial officers agree. The former simply are substituting their personal predilections as to what the law ought to be, while the latter are duty bound to follow and apply without equivocation the duly enacted laws until held invalid by a court of competent jurisdiction.
The State's apprehension that the order vacating appellee's sentence was erroneous is understandable when one examines the only contention made in support of the motion to vacate, i.e., that the United States Supreme Court struck down capital punishment. Much has been said by judges and lawyers about the Furman decision and its import. However, the one thing that has not been authoritatively said about Furman is that it abolished the death penalty.
At the time of the murder for which appellee was convicted, the law of Florida provided that a person convicted of a capital felony shall be punished by death unless there was a recommendation of mercy, and of course there was none in the case at bar. Since the Furman decision did not invalidate the death penalty per se, the only other portion of our death penalty statute which could have been affected was that portion which related to or provided for recommendations of mercy by a jury. Indeed, wading through the morass of verbiage in all nine of the separate Furman opinions convinces me that it was the manner in which the jury played its role in granting or withholding mercy in death cases with which the court found fault.
Thus, the motion to vacate and the order granting same erroneously assumed that the death penalty per se had been abolished by the Furman decision.
During the pendency of this appeal, the legislature enacted Chapter 72-72, Laws of Florida, 1972, appearing in Florida Statutes as Section 921.141, F.S.A. That statutory provision was enacted following the United States Supreme Court's decision in Furman in an obvious effort to retain capital punishment in a form and under circumstances believed to be acceptable to the United States Supreme Court. In State v. Dixon, State v. Setser, State v. Hunter and State v. Sheppard, 283 So.2d 1, decided July 26, 1973, the Florida Supreme Court considered the various objections to the unbridled discretion vested in pre-Furman juries and ruled that such defects or infirmities which were held to exist in Furman had been cured by Section 921.141, the new death penalty law. Accordingly, the State now has a valid law whereunder the death penalty may be constitutionally imposed.
At the time of the offense and trial herein, Florida law provided for the death penalty in capital cases unless the jury recommended mercy. The provision for mercy which was embodied in our law having been held defective, has since been replaced by a valid proviso recently upheld by the Florida Supreme Court, supra. The rectification, as it were, occurred during the pendency of this appeal and therefore *599 before the order and judgment vacating appellee's death sentence became final.
It has long been recognized that an appellate court will apply the law which obtains at the time the appeal is decided in determining the correctness of the order or judgment before it. See R & R Lounge, Inc. v. Wynne, Fla.App., dated November 27, 1973; Florida East Coast Ry. Co. v. Rouse, 194 So.2d 260 (Fla. 1967); and Ingerson v. State Farm Mutual Automobile Insurance Co., 272 So.2d 862 (Fla.App. 1973). Obviously, the application of that principle in a criminal case is subject to the constitutional prohibition against ex post facto laws discussed hereinafter. See also Blackmon v. State, 262 So.2d 264 (Fla.App. 1972).
Since during the pendency of this appeal the statute providing for the manner in which the penalty is to be determined in capital felonies has been changed, we are bound to reverse the order setting aside appellee's death sentence and remand with directions that appellee be given a new trial on the issue of penalty only in accordance with Section 921.141, Florida Statutes, F.S.A., which has recently been upheld by our Supreme Court in State v. Dixon, supra.
In reversing and remanding this case for a new penalty trial, we are not unmindful of the possible contention that a retrial under the newly enacted death penalty statute may collide with constitutional ex post facto principles and, indeed, if one scratches no deeper than the surface, it might appear that appellee is being subjected to a crime or penalty which did not exist either at the time of the murder or at the time of his trial, in violation of the ex post facto principle. See Bouie v. Columbia, 378 U.S. 347, 84 S.Ct. 1697, 12 L.Ed.2d 894 (1963). However, the newly enacted statute, Section 921.141, Florida Statutes, F.S.A., does does not create a new and separate substantive crime. Nor does it provide a new or higher penalty for first degree murder than was provided when the offense or trial herein occurred. All the new statutory provision does is to attempt to provide for a manner in which the death penalty may be imposed in appropriate cases in a way that does not collide with the constitution. It does not provide for a penalty different than that invited by appellee when he killed Officer Parker in cold blood.
In Rooney v. State of North Dakota, 196 U.S. 319, 25 S.Ct. 264, 265, 49 L.Ed. 494, the Supreme Court of the United States had before it a claim that a statute affecting the imposition of the death penalty, which was enacted after the commission of the offense, violated the constitutional prohibition against ex post facto laws and rejected the claim saying:
"We are of opinion that in the particulars just mentioned the statute of 1903 is not repugnant to the constitutional provision declaring that no state shall pass an ex post facto law. It did not create a new offense, nor aggravate or increase the enormity of the crime for the commission of which the accused was convicted, nor require the infliction upon the accused of any greater or more severe punishment than was prescribed by law at the time of the commission of the offense."
In Wharton's Criminal Law and Procedure, Vol. 1, § 20, the generally recognized rule is stated to be:
"Changes in the method of carrying out the sentence or the form of execution are not deemed prohibited as an ex post facto law when they do not in substance operate to the detriment of the defendant."
The cumulative supplement thereto at page 18 illustrates the meaning of the above text by stating:
"For example a statute providing a new method of inflicting the death penalty is not an ex post facto law as to persons already sentenced to death when the [new] statute gives the defendant the choice of methods." Citing Wetzel v. *600 Wiggins, 226 Miss. 671, 85 So.2d 469, cert. den. and app. dismd. 352 U.S. 807, 77 S.Ct. 80, 1 L.Ed.2d 39.
Long ago, Chief Justice Marshall laid the predicate under which we must remand the instant case for retrial on the death penalty question. In United States v. Schooner Peggy, 1 Cranch 103, 110, 2 L.Ed. 49, 51 (1801), the court said:
"`[I]f subsequent to the judgment and before the decision of the appellate court, a law intervenes and positively changes the rule which governs, the law must be obeyed, or its obligation denied. If the law be constitutional, ... I know of no court which can contest its obligation. It is true that in mere private cases between individuals, a court will and ought to struggle hard against a construction which will, by a retrospective operation, affect the right of parties, but in great national concerns ... the court must decide according to existing laws, and if it be necessary to set aside a judgment, rightful when rendered, but which cannot be affirmed but in violation of law, the judgment must be set aside.'"
When measured against ex post facto principles discussed above, it is clear that invocation of the new death penalty statute does not collide with the constitution's ex post facto provisions.
In Witherspoon v. Illinois, 391 U.S. 510, 88 S.Ct. 1770, 20 L.Ed.2d 776, the U.S. Supreme Court reversed a sentence of death because the jury procedure leading to the imposition of the death penalty collided with the constitution and held that the appropriate remedy in such cases is to remand the case for a new penalty trial before a jury to be composed as required by the constitution.
In Anderson v. State, 267 So.2d 8 (Fla. 1972), the State Supreme Court set aside a number of death sentences which had been imposed under Florida's old death penalty law and commuted all of the sentences in murder cases to life imprisonment. That action was taken pursuant to motion made by both the Attorney General and the defendants themselves. Anderson, supra, was decided before the new death penalty statute, Section 921.141, Florida Statutes, F.S.A., went into effect; and a reading of that decision indicates that neither the court nor the Attorney General gave any consideration to the new death penalty statute, perhaps because at the time the new statute had not yet been declared valid by the State Supreme Court. Accordingly, we do not deem Anderson to be controlling precedent in a case such as this where the new law came into being while the case was still pending on appeal and was not considered because its validity had not yet been determined by the State Supreme Court.
In the case at bar,[1] appellee must be retried as to penalty under the new statute which assures that the jury will recommend or withhold mercy, and the death penalty will or will not be imposed in the manner recently approved by our Supreme Court in State of Florida v. Dixon, supra, which held the new law, Section 921.141, Florida Statutes, F.S.A., to be in harmony with Furman v. Georgia, supra.
WIGGINTON, Acting C.J., and JOHNSON, J., concur.
NOTES
[1] In a separate proceeding Rudolph Valentine Lee's appeal from the judgment of conviction was recently affirmed by this court. See Lee v. State, Fla.App., 284 So.2d 23, decided October 16, 1973.