561 So.2d 384 (1990)
Trevor MOHAMMED, Appellant,
v.
STATE of Florida, Appellee.
No. 89-1009.
District Court of Appeal of Florida, First District.
May 7, 1990.
*385 Michael E. Allen, Public Defender, and David P. Gauldin, Asst. Public Defender, Tallahassee, for appellant.
Robert A. Butterworth, Atty. Gen., and Gypsy Bailey, Asst. Atty. Gen., Tallahassee, for appellee.
ZEHMER, Judge.
Trevor Mohammed appeals his conviction and sentence on a charge of aggravated child abuse in violation of section 827.03, Florida Statutes (1987). He raises two points on appeal.
Addressing appellant's first point, we find no error in the trial court's denial of appellant's requested jury instructions based on child abuse under section 827.04(1) and culpable negligence under section 784.03, Florida Statutes. The trial court correctly ruled that neither of these offenses is a lesser included offense of the crime of aggravated child abuse as defined in section 827.03. Kama v. State, 507 So.2d 154 (Fla. 1st DCA 1987).
Appellant's second point complains that the trial court erred in calculating the total points on the sentencing guidelines sheet. The record reflects that at the time appellant committed the instant offense, he was serving 10 years' probation pursuant to a conviction in the state of Georgia for violating the Georgia sodomy statute, section 16-6-2 of the Georgia Code. Appellant contends that the trial court erred in assessing 36 points on the sentencing guidelines scoresheet for this legal constraint and also including the Georgia conviction in his prior record. He argues that (1) the Georgia sodomy statute is facially unconstitutional, and that (2) there is no Florida criminal statute comparable to the Georgia sodomy statute. The state contends that the trial court correctly assessed 36 points for legal constraint based upon the Georgia probation, but concedes that 15 points for a second degree felony was improperly scored on appellant's scoresheet as the Georgia sodomy conviction should have been scored as a misdemeanor under Florida law.
The Georgia sodomy statute provides that: "A person commits the offense of sodomy when he performs or submits to any sexual act involving the sex organs of one person and the mouth or anus of another. A person commits the offense of aggravated sodomy when he commits sodomy with force and against the will of the other person." The statute thus prohibits oral sex between consenting partners, and it prescribes a sentence of up to 20 years' imprisonment therefor. Appellant was convicted of sodomy for engaging in consensual fellatio with a woman in his motel room in Georgia and given 10 years' probation.
We decline to address appellant's constitutional argument, as that argument should have been made in the Georgia prosecution at the time of appellant's trial and conviction. See Bowers v. Hardwick, 478 U.S. 186, 106 S.Ct. 2841, 92 L.Ed.2d 140 (1986).
The state's brief does not direct us to any Florida statute that is directly comparable to the Georgia statute; however, the state argues that the Georgia statute "appears most analogous to Florida Statutes, section 800.02 (1987)." (State's brief, p. 16). Section 800.02 provides that "whoever commits any unnatural and lascivious act with another person shall be guilty of a misdemeanor of the second degree... ." "Unnatural" is defined generally as violating natural law; inconsistent with an individual pattern or custom; deviating from a behavioral, ethical, or social norm. American Heritage Dictionary of the English Language, verba unnatural at 1403 (1979). "Lascivious" is generally defined as tending to excite lust; lewd; indecent; obscene; sexual impurity; tending to deprave the morals in respect to sexual relations; licentious; "conduct which is wanton, lewd, and lustful, and tending to produce voluptuous or lewd emotions." Black's Law Dictionary, verba lascivious at 794 (5th ed. 1979). Section 800.02 does not define a criminal offense with the specificity found in the *386 Georgia statute, and the definitions of the general terms used in section 800.02 are so broad and subjective that they could be said to cover a multitude of diverse conduct depending primarily on a particular person's moral convictions. To give the statute such a broad construction could undoubtedly lead to constitutional problems with the validity of its application. See Bowers v. Hardwick, 478 U.S. 186, 106 S.Ct. 2841, 92 L.Ed.2d 140 (1986); Franklin v. State, 257 So.2d 21 (Fla. 1971). In view of the widely published data on private sexual practices in the United States in respect to consensual oral sex,[1] we are disinclined to conclude that the general, nonspecific language in section 800.02 (especially in comparison with the specific language of the Georgia statute) is sufficiently precise to define as criminal conduct consensual oral sex or fellatio performed by a man and a woman in the privacy of their bedroom, which was the basis of the Georgia charge against appellant in this case. We are led to this conclusion by the reasoning of our supreme court in Franklin v. State, 257 So.2d 21 (Fla. 1971), holding that section 800.01 (prohibiting "the abominable and detestable crime against nature") is facially unconstitutional for "vagueness and uncertainty in its language." Id. at 24. The court explained in Franklin:
We have over a long period of time upheld the statute despite earlier constitutional challenges. We are persuaded that these holdings and this statute require our reconsideration. One reason which makes this apparent is the transition of language over the span of the past 100 years of this law's existence. The change and upheaval of modern times are of drastic proportions. People's understanding of subjects, expressions and experiences are different than they were even a decade ago. The fact of these changes in the land must be taken into account and appraised. Their effect and the reasonable reaction and understanding of people today relate to statutory language.
The blindfold upon our Lady of Justice is symbolic of impartiality, as being blind to all outside influences which would divert from the material facts and law applicable to the case in which justice is being sought upon its merits. Her blindfold in no wise suggests that justice should be blind to the facts of life and of the times in which it functions; for the law, to be vibrant, must be a living thing, responsive to the society which it serves, and to which that society looks as the last true depository of truth and justice.
A further reason dictating our reexamination here is the expansion of constitutional rulings on the invasion of private rights by state intrusion which must be taken into account in the consideration of this statute's continuing validity. The language in this statute could entrap unsuspecting citizens....
Those who are versed in the law may understand the statute's meaning because of their knowledge of legal interpretations in court opinions, but it seems to us that if today's world is to have it brought home to it what it is that the statute prohibits, it must be set forth in language which is relevant to today's society and is understandable to the average citizen of common intelligence *387 which is the constitutional test of such language.
257 So.2d at 23. The "transition of language" and the fact that "People's understandings of subjects, expressions and experiences are different than they were even a decade ago" (257 So.2d at 23), has most assuredly continued apace at an accelerated rate since 1971, when Franklin was decided, and similarly cautions today against applying the imprecise language of section 800.02 to make a criminal offense out of the facts involved in the Georgia prosecution against appellant.
We are aware that in Franklin the court applied the language of section 800.02 (prohibiting "unnatural and lascivious acts") to the consensual homosexual acts being engaged in by the two male defendants in an automobile parked on a fill area, where the policeman walked up to the car and observed their conduct, and upheld their conviction under section 800.02 as a lesser included offense of the charge brought under the invalid section 800.01; but those homosexual acts were being performed in a vehicle in a nonprivate place that was open to public inspection or view, and thus could be reasonably characterized as unnatural and lascivious conduct for this reason. The facts in Franklin are sufficiently distinguishable from the consensual acts between a man and a woman in the privacy of their bedroom that the instant case should not be governed by the construction and application of section 800.02 in Franklin.[2] This conclusion is reinforced by the obvious lack of prosecutions in Florida under section 800.02 to punish either heterosexual or homosexual activities that would violate the specific language of the Georgia statute.
We hold, therefore, that Florida has no criminal statute containing elements of the offense analogous to the Georgia statute under which appellant was convicted, see Forehand v. State, 537 So.2d 103 (Fla. 1989), and that pursuant to rule 3.701 d.5.(a)(5), no points should have been scored for appellant's Georgia conviction as a prior record.[3]
Appellant also argues that the 36 points assessed for his being under "legal constraint" at the time of the offense should likewise be stricken because the legal constraint was based upon the commission of an act that was not criminal under the laws of Florida. He further argues that even if the state's argument were accepted and consensual oral sex were treated as a second degree misdemeanor under section 800.02 authorizing only 6 months' probation, it is fundamentally unfair to add 36 points for legal constraint where the appellant had already served 5 years of the probation, that is, a term well in excess of the maximum term allowable under the Florida statute.
We reject this argument for the following reason. Rule 3.701d.6., Florida Rules of Criminal Procedure, defines legal *388 constraint as including offenders on probation. The rule does not limit one's legal status at the time of the offense to being an offender under Florida law. A person under constraint because of the imposition of a sentence or probation under the laws of another state is deemed to be under legal constraint for purposes of the sentencing guidelines, and whether the offense giving rise to the constraint was a criminal act in Florida or not is irrelevant. Since the only relevant consideration is whether the defendant was under a valid legal restraint, such as probation, which had not been completely served or set aside when he committed the charged offense, we find no error in the assessment of points for legal constraint.
Since it was error to include points for prior record based on appellant's conviction under the Georgia sodomy statute, the sentencing guidelines scoresheet must be recalculated. We note that the form for category four crimes was used by the court below in sentencing appellant. This was error, because that category of criminal offenses does not include violations under chapter 827. Chapter 827 offenses are properly scored under category nine offenses. Accordingly, the sentence is vacated and upon remand the court shall recalculate the correct sentencing guidelines score and impose an appropriate sentence within the correct guidelines range.
The judgment of conviction is AFFIRMED. The sentence is vacated and the cause REMANDED for resentencing.
SHIVERS, C.J., and JOANOS, J., concur.
NOTES
[1] See, e.g., H. Ellis, Studies in the Psychology of Sex (1936); S. Hite, The Hite Report (1976); A. Kinsey, Sexual Behavior in the Human Female (1953); A. Kinsey, Sexual Behavior in the Human Male (1948); P. Robinson, The Modernization of Sex (1976); W. Masters and V. Johnson, Human Sexuality (1985); W. Masters and V. Johnson, Homosexuality in Perspective (1979). See also Gagnon, The Sexual Scripting of Oral Genital Contacts, Archives of Sexual Behavior, 16 (1987); Gadpaille, What is Acceptable Sexual Behavior?, Sexual Behavior, 2 (1972). In 1985, Masters and Johnson wrote:

[W]hile oral-genital sex was avoided by large numbers of married men and women who participated in the Kinsey studies [1938-1946], a majority of married people today include fellatio and cunnilingus in their sexual repertoires (Table 15-2). Eighty-seven percent of wives in the Redbook survey reported using cunnilingus often or occasionally, and 85 percent reported fellatio with a similar frequency (Tavris and Sadd, 1977).
W. Masters and V. Johnson, Human Sexuality 392 (2d ed. 1985).
[2] Section 800.02 has vagueness problems similar to section 800.01 in its use of the term "unnatural." After section 800.01, Florida Statute (1973), prohibiting the "crime against nature," was held unconstitutional, it was repealed by s. 1, ch. 74-121, Laws of Florida, effective October 1, 1974. The legal impact of the historical constructions of section 800.01 was recently discussed in McGahee v. State, 561 So.2d 333 (Fla. 1st DCA 1990). Statutes such as the one repealed in Florida are discussed by Masters and Johnson:

As astonishing as it may seem in an age when oral sex is statistically the norm rather than the exception, a pleasant interlude of cunnilingus or fellatio can, theoretically, lead to arrest and imprisonment... . In general, the statutes refer to these acts as "crimes against nature," going back to the view that heterosexual intercourse (with its reproductive potential) is the only "natural," healthy, nonsinful way of having sexual relations.
W. Masters and V. Johnson, Human Sexuality 458 (2d ed. 1985).
[3] Nothing said in this opinion should be construed as an expression of approval or disapproval of the sexual conduct described. Our concern is limited to the valid application of statutory language consistent with constitutional rights. As the supreme court observed in Franklin, "Legislative action is long past due in this and related fields of personal relationships" (257 So.2d at 24) to clarify and make precise the specific conduct intended to be proscribed while observing an individual citizen's constitutional right to privacy free from compelling and unreasonable intervention by the state. See Bowers v. Hardwick, 478 U.S. 186, 106 S.Ct. 2841, 92 L.Ed.2d 140 (1986).